### SWALM v. GILL.*

(Division B. Oct. 22, 1928.)

[118 So. 446. No. 27343.]

---

*Corpus Juris-Cyc. References: Specific Performance, 36Cyc, p. 750, n. 4.

*A. A. Cohn,* for appellant.

*H. V. Wall,* for appellee.

Argued orally by *A. A. Cohn,* for appellant, and *H. V. Wall,* for appellee.

ANDERSON, J. Appellee filed his bill against appellant in the chancery court of Lincoln county for the specific performance by the latter of a written contract between the parties, by the terms of which appellant agreed to sell and convey, upon payment of the consideration set out in the contract, a certain lot in the city of Brookhaven, in said county. In addition, the bill prayed for general relief. The cause was tried on the original bill and answer of appellant, and proof, resulting in a decree denying appellee specific performance of the contract, but awarding him a decree against appellant in the sum

of seven hundred seventy-eight dollars and sixty-four cents, the value of the permanent improvements added to the lot by appellee while he was in possession and claiming ownership thereof. From that decree, appellant prosecutes this appeal.

Appellee alleged in his bill, in substance: That he was an ignorant negro, while appellant was a white man, shrewd in business. That appellee desired to purchase from appellant the lot in question, and the latter being willing to sell, they thereupon entered into a written contract of sale, by the terms of which appellee agreed to pay appellant the sum of one thousand and fifty dollars for the lot. The sum of fifty dollars was paid in cash, and the balance was to be paid in deferred payments, ranging from two hundred dollars to three hundred eight dollars and sixty-seven cents, running through a period of three years. That on the execution of the contract of sale appellee went into possession of the lot thereunder, and he thereafter paid two hundred dollars additional on the purchase price, making appellee's total payments on the purchase price two hundred and fifty dollars. That appellee some time afterward, being unable to meet his payments, so stated to appellant, who suggested that appellee erect a filling station and garage on the lot for rental, and after so doing, that appellee rent out the filling station and garage, and apply the rentals to the purchase money payments; that if appellee would take that course, appellant would extend such payments. That they thereupon agreed orally to adopt that plan of payment. That appellee then proceeded to, and did, erect on the lot a garage and filling station, which cost him something like nine hundred dollars; however, before such garage and filling station was entirely completed, appellant, in violation of the agreement, forced appellee out of possession of the lot, taking possession thereof himself, thereby repudiating his contract of sale with appellee. That since appellant had been in possession of

the lot and garage and filling station, thereon he had collected rentals therefor amounting to a considerable sum.

The bill prayed for a specific performance of the contract of sale, also for an accounting of the rentals received by appellant for the garage and filling station since he had been in possession thereof, and also for general relief.

Appellant, in his answer, among other things, set up that he had not violated his contract; that, on the contrary, appellee had voluntarily surrendered to appellant the lot and garage and filling station thereon, and agreed to a cancellation of the contract between them.

The court decreed that appellee was not entitled to specific performance; that he had forfeited to appellant his purchase-money payments aggregating two hundred and fifty dollars as provided in the contract; but that appellee was entitled to a decree against appellant for the value of the permanent improvements erected on the lot by the former while he was in possession of it, and claiming title thereto, amounting to seven hundred seventy-eight dollars and sixty-four cents.

Appellee's evidence tended to sustain the material allegations of his bill. Appellant introduced on the trial a letter from appellee, written shortly before appellant regained possession of the lot, in which appellee stated that he could not meet the purchase-money payments, and it looked like he would have to lose the payments already made.

The court in its decree necessarily found, as a fact, with appellee on that question; in other words, that appellee did not agree to a cancellation of the contract of sale and the surrender to appellant of the property, but, on the contrary, was forcibly ousted of possession thereof by the appellant; and that he made the improvements on the lot in good faith.

Under section 1848 of the Code of 1906 (Hemingway's Code of 1927, section 1549), a defendant ousted of pos-

session of land in an action of ejectment, is given the right of compensation from the plaintiff for the value of all permanent, valuable, and not ornamental, improvements made by the defendant on the land where such improvements have been made by the defendant under a deed or contract of purchase acquired or made in good faith.

Section 552, Code of 1906 (Hemingway's Code of 1927, section 324), provides as follows:

"In suits to try title, to cancel deeds and other clouds upon title, and to confirm title to real estate, the chancery court shall have jurisdiction to decree possession and to displace possession, to decree rents and compensation for improvements and taxes; and in all cases where said courts heretofore exercised jurisdiction auxiliary to courts of common law, it may exercise such jurisdiction to grant the relief sought, although the legal remedy may not have been exhausted or the legal title established by a suit at law."

We are of opinion that the purpose of the latter statute was to confer on courts of equity at least as broad powers with reference to the allowance for permanent and valuable improvements as the former statute conferred on courts of law in actions of ejectment.

*Affirmed.*